UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**KENNETH M.,**

**Plaintiff,**

**v.** **Case No. 25-CV-1260**

**FRANK J. BISIGNANO,**
*Commissioner of the Social Security Administration*,

**Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging he has been disabled since October 2, 2018 (Tr. 57 (amended alleged onset date)), plaintiff Kenneth M. seeks supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act. His date last insured was December 31, 2023. (Tr. 1190.) After his application was denied initially (Tr. 155–63) and upon reconsideration (Tr. 169–73), a hearing was held before Administrative Law Judge (ALJ) Dean Syrjanen on April 20, 2022 (Tr. 54–84). On May 23, 2022, the ALJ issued a written decision concluding that Plaintiff was not disabled. (Tr. 20–53.)

On November 9, 2022, the Appeals Council reviewed the ALJ's decision and concluded that there was an error of law. (Tr. 1280-86.) The Appeals Council found Plaintiff disabled beginning on May 26, 2022, the date of the ALJ's decision, but concluded that he was not disabled from October 2, 2018, through May 25, 2022. (Tr. 1298.)

Plaintiff thereafter filed an action in federal court seeking reversal and remand of the portion of the decision which determined he was not disabled prior to May 26, 2022. (Tr. 1311–12). On July 5, 2023, the court entered an order upon the stipulation of the parties remanding the matter for a new hearing. (Tr. 1331.) On December 14, 2023, the Appeals Council vacated the prior hearing decision and specified errors to be corrected on appeal. (Tr. 1340–42.) A hearing was held before ALJ Syrjanen on June 4, 2024. (Tr. 1219–1240.) On June 26, 2024, the ALJ issued a written decision concluding that Plaintiff was not disabled from October 2, 2018, through May 25, 2022. (Tr. 1188–1211.) The Appeals Council declined to assume jurisdiction on June 17, 2025 (Tr. 1178–80), and the ALJ's decision became final and appealable to federal court. *See* 20 C.F.R. §§ 404.955, 404.984, 416.1455, 416.1484.

On August 21, 2025, Plaintiff filed this action. (ECF No. 1.) All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 6, 7) and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Plaintiff "has not engaged in substantial gainful activity since October 2, 2018, the amended alleged onset date." (Tr. 1190.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Plaintiff has the following severe impairments: degenerative disc disease, rheumatoid arthritis, cubital tunnel syndrome, obesity, bipolar disorder, and post-traumatic stress disorder (PTSD). (Tr. 1191.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 1191.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996) (hereinafter SSR 96-8p). The ALJ concluded that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: he can occasionally operate foot controls with the left lower extremity; he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; he can occasionally stoop, kneel, crouch, crawl, and balance; he can frequently reach, handle, and finger with bilateral upper extremities; he can never be exposed to workplace hazards such as moving mechanical parts and unprotected heights; he requires a sit/stand option that allows him to stand for 1-2 minutes after every

> 30 minutes of sitting; he can perform simple, routine tasks with no fast-paced or inflexible production requirements (such as assembly line work); he is able to maintain attention, concentration, persistence, and pace for the performance of simple, routine tasks for two-hour periods throughout an 8-hour workday and 40-hour workweek with typical breaks; he can perform jobs involving simple decision making and simple changes that occur no more than occasionally; he can perform jobs where tasks can be performed independently and do not involve tandem tasks or more than occasional interaction with supervisors, co-workers, and the public.

(Tr. 1194.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that, Plaintiff "was not capable of performing any past relevant work." (Tr. 1208.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 1208.) Representative jobs identified were document preparer, addresser, and tube operator. (*Id.*)

Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 2, 2018, through May 25, 2022. (Tr. 1210.)

## 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *Wagner ex rel L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *Wagner ex rel L.D.R.*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Physical RFC

Plaintiff argues that the ALJ erred by failing to support his conclusion that Plaintiff "could sustain sedentary work, with a sit/stand option allowing for standing for one to two minutes after thirty minutes of sitting and frequent reaching, handling, and

fingering." (ECF No. 18 at 15.) Plaintiff contends that the ALJ failed to build an accurate and logical bridge from the evidence to these exertional conclusions because they were not consistent with any medical opinion in the record, the ALJ failed to explain how evidence was weighed in relation to the exertional limitations, and the ALJ failed to include any reaching limitation despite suggesting that he had accounted for reaching deficiencies. (*Id.* at 15–21.) The Commissioner contends that the ALJ sufficiently explained how he assessed the physical RFC and supported his findings with substantial evidence. (ECF No. 25 at 7–10.)

**4.1(a) Sedentary Exertion with Sitting and Standing Limitations**

Plaintiff asserts that the ALJ's finding that he could sustain the exertional requirements of sedentary work was not consistent with any medical opinion in the record. (ECF No. 18 at 16.) He acknowledges that the ALJ concluded he had a greater exertional limitation than that opined by the State Agency reviewing physicians. (*Id.* (citing Tr. 1202).) However, he does not explain how the ALJ should have evaluated any particular physician's opinion differently. (*See id.* at 16–17); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023) (finding that the ALJ's logical bridge building was supported by his "careful consideration … shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians").

Plaintiff claims "the ALJ must provide an evidentiary basis for [his] conclusions about a claimant's physical capacity." (ECF No. 18 at 17.) He claims that the ALJ resorted

to summarizing evidence in a way that reveals nothing about how the evidence was weighed in finding that he could sustain sedentary work at the full-time level. (ECF No. 18 at 17–19.) He maintains that the ALJ failed to identify any evidentiary basis for his findings that Plaintiff could sustain the sitting and standing limitations set forth in the RFC finding. (ECF No. 29 at 4.) He argues these failures constituted a failure to build an accurate and logical bridge. (ECF Nos. 18 at 15, 29 at 3.)

Plaintiff also claims that the ALJ failed to comply with Social Security Ruling 96-8p (SSR 96-8p) by failing to support his findings. (ECF No. 18 at 16.) SSR 96-8p "instructs ALJs to assess a claimant's work-related abilities on a 'function-by-function basis' before classifying his residual functional capacity in exertional terms (e.g., 'light work')." *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. 2009) (citing "Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims," SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996)).

"An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). The ALJ carefully identified both favorable and unfavorable evidence related to Plaintiff's subjective complaints of pain, numbness, use of a walker, and difficulty with sitting and standing. (Tr. 1195–96.) He discussed Plaintiff's subjective complaints in comparison with examination findings that confirmed some pain, tenderness, and decreased sensation but also revealed conservative treatment, findings of full strength and normal sensation, good range of motion, lack of gait

abnormalities, pain relief with medication, and brief use of a walker. (Tr. 1196–98.) The ALJ also noted that Plaintiff's MRI of his lumbar spine "confirmed some abnormalities, but they were characterized by the radiologist as no greater than mild to moderate, with no mention of nerve root involvement." (Tr. 1198.)

The ALJ opined that "longitudinal physical examinations findings support the claimant's ability to perform sedentary work with reduced postural activities." (Tr. 1197.) It appears that the ALJ attempted to resolve the evidentiary contradictions by weighing the objective medical findings (i.e., those from longitudinal physical examinations) more favorably than Plaintiff's reports of pain and decreased sensation. But the ALJ did not explain *why* he weighed the objective medical findings more favorably than Plaintiff's reports of pain and decreased sensation. "[T]he ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Because the ALJ's sedentary and sit/stand limitations are not built on logical bridges, the court will reverse the decision and remand for further proceedings so that the ALJ can explain how he reaches a conclusion resolving the contrary evidence.

**4.1(b) Frequent Reaching, Handling, and Fingering**

Plaintiff argues that the ALJ erred by finding he could engage in frequent reaching, handling, and fingering with the bilateral upper extremities. (ECF No. 18 at 19.) He asserts that, although the ALJ included limitations beyond those identified by opining

doctors, he failed to adequately support that Plaintiff could perform within the limitations in the RFC. (*Id.*) He once again claims that the ALJ merely summarized records and failed to show how he weighed the evidence. (*Id.*)

The Commissioner contends that Plaintiff identifies no evidence that established a finding of greater manipulative restrictions. (ECF No. 25 at 9–10.)

Acknowledging Plaintiff's pain, tenderness, and mild motion loss in his wrists, the ALJ concluded, "To provide for symptoms such as pain and examination findings of mild decrease in wrist range of motion, the undersigned has reduced the postural demands for overhead reaching and handling, fingering, and feeling." (Tr. 1197.) Plaintiff has not explained how the ALJ should have interpreted the relevant examination findings differently, especially when no physician opined that he had any manipulative restrictions. Plaintiff's argument simply amounts to a disagreement with the ALJ's conclusion about how much Plaintiff could do with his pain and other symptoms. The court, however, may not reweigh the evidence to reach a different conclusion even if the court might have decided the issue differently had it been in the position of the ALJ. *Burmester*, 920 F.3d at 510. The court may upset the ALJ's decision only if he applied the incorrect legal standards or the decision was not supported by substantial evidence. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

Plaintiff also contends that the ALJ "seemingly relied on his own speculative lay opinion in assessing the impact of the studies of Plaintiff's cubital tunnel syndrome on

his ability to reach, handle, and finger." (ECF No. 18 at 19–20.) But he does not explain how the ALJ applied a lay opinion to his diagnosis with cubital tunnel syndrome. (*Id.*) The ALJ reviewed the examination and treatment notes and stated, "Given this condition, the undersigned found that the claimant was limited in his ability to handle, finger, and feel." (Tr. 1198.)

Plaintiff points out that, although the ALJ stated that Plaintiff "could only occasionally reach overhead and frequently reach, handle, and finger with his bilateral upper extremities," he left the restriction to "occasional" overhead reaching out of the RFC assessment. (ECF No. 18 at 20–21.) The Commissioner contends that the ALJ's single reference to "occasional" reaching rather than "frequent" was "plainly a mistake" in light of its omission from the remainder of the opinion, RFC assessment, and hypothetical to the vocational expert (VE). (ECF No. 25 at 10.)

The ALJ's reference to "occasional" overhead reaching cannot so readily be understood as a simple misstatement. In addition to cubital tunnel syndrome, before referencing "occasional" overhead reaching the ALJ discussed Plaintiff's rheumatoid arthritis and degenerative disc disease in his cervical spine both affecting his upper extremities. (Tr. 1199.) It is unclear whether the ALJ meant to account for these conditions when opining that Plaintiff could only occasionally reach overhead.

Therefore, the court will reverse the decision and remand for further consideration with respect to the overhead reaching limitation.

**4.2. Mental RFC**

Plaintiff argues that the ALJ failed to comply with SSR 96-8p with respect to his mental RFC because he did not provide sufficient support for his conclusion that Plaintiff could maintain attention, concentration, persistence, or pace for two-hour periods and did not require a restriction to brief and superficial interaction. (ECF No. 18 at 21–26.)

**4.2(a) Attention, Concentration, Persistence, and Pace**

Plaintiff contends that the ALJ found the opinion of state agency psychological consultant Larry Kravitz, Psy.D, to be generally persuasive but adopted a mental RFC inconsistent with Dr. Kravitz's opinion without sufficient explanation. (ECF No. 18 at 21–25.) The Commissioner maintains that the ALJ properly relied on Dr. Kravitz's opinion. (ECF No. 25 at 11–16.)

At the reconsideration level of review, Dr. Kravitz opined that Plaintiff was "moderately limited" in his ability to maintain attention and concentration for extended periods, as well as in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and in his ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 147–48.) Dr. Kravitz explained in narrative form that Plaintiff's "[s]ymptoms of anxiety, depression, and mood dysregulation would interfere with his ability to sustain concentration on more than simple tasks mentally." (Tr. 148.)

The ALJ determined Plaintiff has a moderate limitation in his ability to maintain concentration, persistence, or pace. (Tr. 1193.) The ALJ observed that Dr. Kravitz's findings of moderate limitations "indicate a fair, not inadequate, ability to sustain work throughout a workday and workweek and perform at a consistent pace." (Tr. 1205.) Indeed, a "moderate" limitation means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c).

Plaintiff argues that the ALJ failed to articulate whether he disagreed with Dr. Kravitz's moderate limitation in maintaining attention and concentration or intended to accommodate it in the RFC. (ECF No. 18 at 22.) Plaintiff further contends that the ALJ's finding that he could maintain attention, concentration, persistence, and pace for two-hour segments was inconsistent with Dr. Kravitz's opinion that he was moderately limited because an unimpaired worker is expected to work in two-hour segments. (*Id.* at 23.)

The ALJ left no doubt that he intended to account for Dr. Kravitz's moderate limitation in attention and concentration in the RFC. The ALJ specifically interpreted Dr. Kravitz's narrative explanation about concentration and pace to mean that "simple work could be enough to satisfy this limitation." (Tr. 1206.) The ALJ further observed that, although Dr. Kravitz suggested that a limitation to simple work would be sufficient, he "went beyond that limitation in the above residual functional capacity, which the

undersigned believes is generally consistent with this overall opinion." (Tr. 1206.) Accordingly, the ALJ's RFC limitation to maintaining attention, concentration persistence and pace for two-hour periods should not be read in isolation or as inconsistent with Dr. Kravitz's opinion. The ALJ stated he was building off of Dr. Kravitz's opinion that found Plaintiff would encounter limitations when the work exceeded "simple" tasks mentally. (Tr. 1206.)

Thee ALJ built a logical bridge from the evidence to his conclusion that Plaintiff could work in two-hour segments with work limited to "simple, routine tasks with no fast-paced or inflexible production requirements (such as assembly line work)." (Tr. 1194.) Plaintiff's motion to reverse and remand the ALJ's decision will be denied with respect to attention, concentration, persistence, and pace.

**4.2(b) Brief and Superficial Interaction**

Plaintiff contends that the ALJ improperly rejected Dr. Kravitz's narrative finding that he "would do best with only brief and superficial workplace contacts." (ECF No. 18 at 25 (citing Tr. 148, 1206).)

The ALJ stated he was not adopting "the limitation of brief and superficial workplace social contact" because "[t]his limitation is not articulated in vocationally relevant terms; it is not defined or explained." (Tr. 1206.) As such, the ALJ instead provided limitations "to no more than occasional interaction with supervisors, co-

workers, and the public and performance of jobs where tasks can be performed independently, without performance of tandem tasks." (Tr. 1206.)

Plaintiff argues that the ALJ should have asked the vocational expert (VE) about Dr. Kravitz's limitation of brief and superficial workplace social contact before determining that the terms were not vocationally relevant. (ECF No. 18 at 25.) The Commissioner contends that a VE "would have no ability to explain to the ALJ what Dr. Kravitz meant by brief and superficial" because neither term is defined in agency policy. (ECF No. 25 at 17.) Plaintiff replies that the terms are widespread throughout the Seventh Circuit and that vocational witnesses are able to discern their significance. (ECF No. 29 at 12 (collecting cases).)

"As several courts in the Seventh Circuit have recognized, … 'superficial' describes the quality or nature of interactions." *Paul J.S. v. Bisignano*, No. 4:24-CV-00131-TWP-KMB, 2025 WL 2695586, at *5, 2025 U.S. Dist. LEXIS 185535, at *15–16 (S.D. Ind. Sept. 22, 2025) (collecting cases). Courts have likewise acknowledged that "brief" refers to "the length of the social interactions that plaintiff could tolerate in the workplace." *Feliciano T. v. Bisignano*, No. 23-CV-2777, 2026 WL 194583, at *4, 2026 U.S. Dist. LEXIS 13766, at *12 (N.D. Ill. Jan. 26, 2026) (finding the court "cannot accept the ALJ's erroneous statement that the opinion [that plaintiff could tolerate "brief, superficial" workplace interactions] is not 'vocationally relevant'").

The Commissioner points out that Dr. Kravitz's indication that Plaintiff would "do best" with brief and superficial interactions is inconsistent with the objective of the RFC being to assess the "most" a claimant can do and not to describe an "ideal" work environment. (ECF No. 25 at 17 (citing SSR 96-8p, 1996 WL 374184, at *2 ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*.").) But the ALJ did not cite this reason for rejecting the limitation. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("Our review is limited to the reasons articulated by the ALJ in her decision.").

The ALJ did not explain why the terms "brief and superficial" were not vocationally relevant. *See Melissa G. v. Saul*, No. 18-CV-50218, 2019 WL 4392995, at *1 (N.D. Ill. Sept. 13, 2019) (acknowledging the RFC set by the ALJ limited the claimant to "brief and superficial public interaction"); *Wilson v. Colvin*, No. 2:14-CV-116-TLS, 2016 WL 5403114, at *2 (N.D. Ind. Sept. 28, 2016) (referencing the VE's assessment for an individual who could have "brief, superficial contact with supervisors, coworkers, and the general public"). Nor did he seek additional information from the medical source (that is, Dr. Kravitz) as to what he meant by brief and superficial. *See Molly G. v. Bisignano*, No. 3:24-CV-1390-SMY, 2025 WL 2753598, at *6 (S.D. Ill. Sept. 29, 2025) (finding "the ALJ failed in his duty to develop the record" by not "request[ing] clarification from the medical sources as to how they defined 'brief and superficial'").

Because the court cannot trace the ALJ's reasoning with certainty, this issue warrants remand for another opportunity to construct an accurate and logical bridge. *See Paul J.S.*, 2025 WL 2695586, at *6 ("[T]he Court's finding that it cannot trace the ALJ's reasoning with certainty is sufficient to require remand." (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)).

**4.3. Subjective Symptom Evaluation**

Plaintiff argues that the ALJ erred by failing to comply with Social Security Ruling 16-3p (SSR 16-3p) in evaluating his subjective allegations of pain and activities of daily living. (ECF No. 18 at 26 (citing "Titles II & XVI: Evaluation of Symptoms in Disability Claims," SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017)).) SSR 16-3p counsels that the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304. It further states that the claimant's activities of daily living will be considered "to evaluate the intensity, persistence and limiting effects of an individual's symptoms." (*Id.*)

**4.3(a) Allegations of Disabling Pain**

Plaintiff contends that the ALJ mentioned only some of the abnormal findings from the objective medical evidence and failed to assess whether these findings supported his allegations of disabling pain. (ECF No. 18 at 27 (citing Tr. 1196–99).)

The Commissioner argues that the ALJ need cite only one valid reason for not relying on a claimant's allegations of disabling pain. (ECF No. 25 at 3 (citing *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) (courts will "not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding.")).) The Commissioner also contends that the ALJ relied "to some extent" on Plaintiff's allegations to assess the RFC. (*Id.* at 4.) The Commissioner claims "the ALJ explained that Plaintiff's allegations that his symptoms were wholly disabling were not consistent with the record, and the ALJ explained how he drew that conclusion based on the evidence." (*Id.*)

The ALJ made a blanket statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 1196.) The ALJ proceeded to analyze Plaintiff's objective medical evidence. But it is not enough for an ALJ to merely discuss the objective medical evidence in a claimant's treatment history alongside his reported symptoms; he must provide "specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *see also* SSR 16-3p. He must explain his "reasoning behind the decision to credit some evidence over the contrary evidence, such that [a reviewing court] could understand [his] logical bridge between the evidence and the conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014).

The ALJ never took the bridging step of concluding that Plaintiff's allegations of pain were not as severe as alleged for any particular reason. (Tr. 1196–99.) The Commissioner pointed to Plaintiff's decision not to take medication and one statement that Plaintiff's pain was "not severe." (ECF No. 25 at 4–5 (citing Tr. 1196, 1198).) The Commissioner states that "the ALJ reasonably concluded that Plaintiff did not seek treatment in a manner that was consistent with his allegations." (*Id.*)

But the ALJ made no such conclusion; he did not actually state that Plaintiff's medication/treatment history, inconsistent statement, or any other circumstances undermined Plaintiff's subjective allegations of pain. This court's review is limited to the reasons stated in the ALJ's decision. *Campbell*, 627 F.3d at 306 ("Our review is limited to the reasons articulated by the ALJ in her decision.").

In sum, the ALJ's implicit decision to partially discredit Plaintiff's symptoms lacks sufficient explanation. *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("We will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong' meaning it lacks explanation or support." (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014))). On remand he must explain how he reached his conclusion that Plaintiff's symptoms were not as severe as alleged.

**4.3(b) Activities of Daily Living**

Plaintiff contends that the ALJ improperly relied on two of his activities of daily living to support his conclusion that Plaintiff could engage in full-time work: working as

a property manager and caring for his young child. (ECF No. 18 at 26–29.) He claims the ALJ failed to account for the challenges and limitations he encountered in each of those roles before concluding that they supported his ability to perform full-time work. (*Id.*)

The Commissioner argues that the ALJ found Plaintiff's activities indicated that his ability to interact with others was not disabling. (ECF No. 25 at 6.) But the ALJ did not limit his conclusion about Plaintiff's daily activities only to his interpersonal skills. The ALJ stated, "These daily living activities, which require similar physical and mental abilities as work activities, even considering the claimant's various interpersonal issues, suggest the ability to perform work with the physical and mental limitations in the above residual functional capacity." (Tr. 1200.)

The ALJ did not acknowledge Plaintiff's reports that his symptoms were worsened by working as a property manager or that he only handled selling the apartments because he was "not physically able" to perform other property manager duties. (ECF No. 18 at 28 (citing Tr. 1122, 1478).) The ALJ did not account for what duties the property manager job entailed or how Plaintiff performed them. *See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (remanding where the ALJ failed to "identify a basis for his conclusion that the life activities [the claimant] reported were inconsistent with the physical impairments she claimed").

The ALJ also did not consider the nuances of Plaintiff's childcare activities. The ALJ stated, "Given the child's very young age, it is reasonabl[e] to infer he required

assistance with all manner of cares, including with bathing, dressing, feeding, toileting, and overall supervision." (Tr. 1200.) But the ALJ did not acknowledge Plaintiff's reports that he required assistance from others for childcare responsibilities because "it was hard for [him] to lift him" and he spent "maybe one [day] out of the week" alone with his son. (Tr. 65.) Plaintiff's girlfriend also submitted a third-party function report indicating that they needed a sitter to care for the child because Plaintiff could not lift him, stand long enough to cook his lunch, or bathe him. (Tr. 369–70.)

The ALJ was not free to ignore Plaintiff's limited ability to engage in the cited childcare activities. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities."). Moreover, "sheer necessity may compel one to perform tasks at home no matter how painful, such as taking care of one's child." *Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016).

By failing to acknowledge Plaintiff's limitations in his ability to engage in daily activities, the ALJ has failed to build the requisite accurate and logical bridge between the evidence related to Plaintiff's daily activities and his conclusion that they support full-time work consistent with the RFC. For this reason, remand is necessary.

**4.4. Jobs in the National Economy**

Plaintiff argues that the ALJ erred by failing to meet his step five burden of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity

and vocational factors." (ECF No. 18 at 12 (quoting 20 C.F.R. § 404.1560(c)(2)).) He claims the ALJ acted in contravention of Emergency Message 24027 (EM-24027) issued by the Social Security Administration on January 5, 2025. (ECF No. 18 at 12–15.)

EM-24027 states that certain jobs in the Dictionary of Occupational Titles (DOT) "may refer to job materials or processes that have been replaced by more modern materials or processes." EM-24027.[1] Therefore, an adjudicator may not cite any of the DOT occupations listed in the emergency message to support a "not disabled" determination without additional evidence from a VE supporting the ALJ's conclusion that, as the occupation is currently performed, its requirements are consistent with the claimant's RFC and that it exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant. *Id.* All three of the jobs that the ALJ concluded Plaintiff could perform—document preparer, addresser, and tube operator—are listed in EM-24027. (Tr. 1209.)

Plaintiff contends that the ALJ failed to comply with EM-24027 because the additional information he obtained from the VE about how the document preparer and addresser jobs are currently performed is inaccurate and inconsistent with his RFC and because the ALJ failed to obtain any evidence about how the tube operator job is currently performed. (ECF No. 18 at 12–15.)

[1] Available at https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last accessed Sept. 10, 2026).

The Commissioner argues that the ALJ's step five conclusion rests on substantial evidence because the ALJ reasonably relied on the VE to conclude that Plaintiff could perform the document preparer and addresser jobs, which constitute significant job numbers even without the tube operator job.[2] (ECF No. 25 at 18–21.)

The VE explained that only one-third of the 9,000 document preparer jobs are currently performed as described in the DOT with microfilming but that the rest now require preparing documents for "digitizing, such as removing staples all day." (Tr. 1231.) The VE also stated that the addresser jobs were done by hand or typewriter when the DOT was written but are now performed by "semi-unskilled computer entry." (Tr. 1231.) The VE confirmed that both the document preparer and addresser jobs are consistent with the exertional limitations set forth in the DOT, that they remain unskilled jobs and do not require a higher level of skill than the versions described in the DOT. (Tr. 1233–34.)

Plaintiff argues that the VE's testimony about digitizing means the document preparer job requires computer skills.[3] (ECF No. 18 at 14.) He contends the ALJ did not find he possessed computer skills and, therefore, both the document preparer and

---

[2] The Commissioner points out that Plaintiff's hearing with the ALJ occurred before EM-24027 went into effect. (ECF No. 25 at 21 n.10.) But the timing is irrelevant to the essence of Plaintiff's argument regarding the document preparer and addresser jobs because the ALJ received testimony that they are performed differently than as set forth in the DOT, and he needed to reconcile that information.

[3] Plaintiff also suggests that the VE's statement about jobs removing staples "all day" seems dubious. (ECF No. 18 at 14.). While the court doesn't disagree, the argument does not address all document preparer jobs.

addresser jobs require a higher skill level than he possessed during the relevant time. (*Id.*) He claims the VE's testimony about consistency with the skill level set forth in the DOT is inaccurate because the fact that these jobs require computer skills is not consistent with unskilled work. (ECF No. 29 at 3.)

The ALJ found Plaintiff could perform "simple, routine tasks." (Tr. 1194.) The Seventh Circuit Court of Appeals has observed that the terms "simple, routine, and repetitive tasks" refer to "unskilled work," which the regulations define as work that can usually be learned in thirty days. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); 20 C.F.R. § 404.1568. Plaintiff contends that "[i]t simply does not follow that an individual with no training or knowledge of computers could learn how to use a computer and also learn the specific job tasks in a 30-day period." (ECF No. 29 at 3.)

But Plaintiff does not explain or offer any evidence to contradict the VE's testimony that the document preparer and addresser jobs are currently performed as unskilled jobs. He cites two unpublished cases in which the court referenced the plaintiff having "computer skills" and discussed the plaintiff having transferrable computer skills. (ECF No. 18 at 14 (citing *Terry H. v. Kijakazi*, No. 20-CV-7825, 2022 WL 2439940, at *4 (N.D. Ill. July 5, 2022); *Brasher v. Berryhill*, No. 16-CV-729-JPG-CJP, 2017 WL 3130239, at *5 (S.D. Ill. July 24, 2017)).) But the cases say nothing about whether the sort of basic computer usage described by the VE in this case could ever constitute unskilled work under the regulations.

"Social Security Ruling 00–4p requires ALJs to ask whether a VE's testimony conflicts with information provided in the DOT before relying on the VE's testimony." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011); (ECF No. 29 at 3). Plaintiff does not dispute that the ALJ heard from the VE about how the document preparer and addresser jobs conflicted with the information in the DOT; he simply challenges the accuracy of the VE's testimony. But Plaintiff's speculation that *any* computer use removes a job from the unskilled category is insufficient to find that the ALJ could not reasonably rely on the VE's testimony. Because the 9,000 document preparer and 12,000 addresser jobs constitute significant numbers, it is unnecessary to address Plaintiff's argument regarding the tube operator job.

The VE's testimony constitutes substantial evidence on which the ALJ could reasonably rely. Therefore, Plaintiff's request to reverse and remand the ALJ's decision will be denied with respect to his step 5 argument.

**5. Conclusion**

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed** and, pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 15th day of September, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge